# C. B. THOMAS v. ARTHUR RAMBERG AND OTHERS.[1]

July 10, 1953.

No. 36,005.

[1]Reported in 60 N. W. (2d) 18.

2

*Bryngelson, Pratt & Bradley* and *M. E. Culhane,* for appellant.

*J. A. A. Burnquist,* Attorney General, and *Charles E. Houston,* Assistant Attorney General, for respondents.

MATSON, JUSTICE.

Plaintiff, an employer in the retail merchandising field, appeals from a denial of his motion to enjoin defendants, who are members of the industrial commission (hereinafter called the commission), from taking any action for fixing minimum rates of pay for women and minors in the retail merchandising business in this state.

This action grows out of proceedings instituted for the revision of the commission's minimum wage order No. 18. On November 30, 1951, Florence Burton, who was then chief of the commission's division for women and children, submitted to the commission a written report to prepare the way for the revision of wage order No. 18, wherever the minimum wages thereby established for women and children were below the then present cost of living. On February 28, 1952, in contemplation of the making of a new minimum wage order, the commission appointed, pursuant to the mandate of M. S. A. 177.08, an advisory board consisting of three representatives of the employers, three representatives of the employees in the retail merchandising business, and three representatives of the public. Florence Burton, who had been retired as a regular employee of the commission, was appointed as one of the

three women selected to represent the public. Two men and one woman were appointed to represent the employees and three men for the employers.

The advisory board held hearings in March, April, May, and June 1952. On June 26, 1952, the industrial commission received the majority and minority reports of the advisory board. The majority report was signed by the three representatives of the employees and the three representatives of the public; it recommended new minimum rates of pay for women and minors, for apprentices and learners, and for minors under the age of 18 in the retail merchandising business. The minority report, which was signed by the representatives of the employers, concluded that no information or facilities were made available to the advisory board to enable it to determine with reasonable accuracy the need for new minimum wages for women and minors and recommended that the industrial commission should conduct further investigations.

On July 1, 1952, the industrial commission gave notice that public hearings would be held on August 18, 20, 21, and 22, 1952, "for the purpose of receiving evidence concerning the cost of living sufficient to maintain employed women and minors in health and supply them with the necessary comforts and conditions of reasonable life."

Plaintiff, as an employer in the retail merchandising business, on August 15, 1952, obtained a temporary restraining order from the district court restraining the defendants, as commissioners of the industrial commission, from taking any further action for fixing minimum rates of pay for women and minors in the retail merchandising business except for holding public hearings. The temporary restraining order was granted on the theory that the commission in acting to establish new minimum wage levels had exceeded its jurisdiction. The claim of lack of jurisdiction was predicated on the contention that the commission was without power to proceed, since the advisory board had not been lawfully appointed as required by statute because (1) the commission had failed to make rules and regulations governing the selection and

modes of procedure of the advisory board as required by § 177.08; (2) one of the members chosen to represent the public, Miss Florence Burton, as a former chief of the commission's division for women and children, was not a disinterested person within the meaning of § 177.08; (3) the commission had failed to appoint one male person to represent the public; and (4) the commission failed to appoint as a member of the advisory board to represent the employers a person residing in a city, town, village, borough, or township within certain classifications established by the commission.

It appears that the public hearings of the commission were rescheduled for September 22, 1952, but the record does not show whether such hearings were actually held.

On November 5, 1952, the Hennepin county district court entered an order which not only denied plaintiff's motion for a permanent injunction but also dissolved the temporary restraining order of August 15, 1952. This order was based on the theory that the district court was without equitable jurisdiction because the action was prematurely brought and further because an adequate method for the review of decisions or orders of the industrial commission is provided by § 177.122, which authorizes review by certiorari. Plaintiff's appeal is from such order.

We need consider only the following issue: Prior to the exhaustion of administrative remedies, will equity enjoin the continuation of a proceeding before an administrative agency on jurisdictional or constitutional grounds *without a positive showing that plaintiff, if equitable relief is not granted, will sustain irreparable injury* as distinguished from a mere possibility of injury based on nothing more than an apprehension that final administrative action will be detrimental to the plaintiff?

As an exception to the long-settled rule that no one is entitled to injunctive protection against the actual or threatened acts of an administrative agency until the prescribed statutory remedy (here, certiorari under § 177.122) has been exhausted, a person who is possessed of any recognized special interest[2] may

2 See, 37 Minn. L. Rev. 1, 24.

be granted injunctive relief on jurisdictional or constitutional grounds[3] without first exhausting[4] the administrative remedy[5] *if* he can show that the pursuit and exhaustion of such administrative remedy[6] will cause him imminent and irreparable harm as distinguished from merely speculative damages based on nothing more than an apprehension that the final outcome of the administrative proceedings will be prejudicial. In other words, *absent a showing that plaintiff is faced with the actual or imminent peril of sustaining irreparable harm—that is, real and serious injury[7]—if the pending administrative proceedings are continued to their final completion,* the sole allegation that the administrative agency has or is about to exceed its jurisdiction is not of itself sufficient to invoke injunctive relief to enable a court to examine forthwith the basis of the agency's jurisdiction. The right to invoke equity's aid is dependent upon a positive showing that a failure to grant injunctive relief will result in irreparable harm.[8] In application the

---

[3]See, Martin v. Wolfson, 218 Minn. 557, 16 N. W. (2d) 884.

[4]The principle of the exhaustion of administrative remedies is closely related to that of a finality of administration (see, 42 Am. Jur., Public Administrative Law, §§ 194, 198), but neither principle is to be confused with the doctrine of primary jurisdiction (see, Davis, Administrative Law, § 197).

[5]"* * * The language of exhaustion of remedies is customarily applied to adjudication and not to rule making; the language of rightness for review is applied to rule making and to administrative action which is embodied neither in regulations nor in final orders." Davis, Administrative Law, § 182.

[6]As to inadequacy of an administrative remedy such as where certiorari is inadequate because matters rendering the proceeding defective appear only dehors the record, see 37 Minn. L. Rev. 26, and cases there cited; Davis, Administrative Law, § 189.

[7]City of Jordan v. Leonard, 119 Minn. 162, 137 N. W. 740; 3 Dunnell, Dig. & Supp. § 4471. See, 46 Yale L. J. 255; Davis, Administrative Law, § 188.

[8]Moller v. Robertson, 146 Minn. 265, 178 N. W. 590; Montgomery v. McEwen, 9 Minn. 93 (103) ; 3 Dunnell, Dig. & Supp. §§ 4470, 4471, and cases therein cited; Stoddard v. Public Utilities Comm. 137 Me. 320, 19 A. (2d) 427. See, 46 Yale L. J. 255.

principle of exhaustion of administrative remedies and that of the finality of administrative action are closely related since usually only final administrative orders and decisions are subject to review. As already noted with respect to the exhaustion of administrative remedies, it is the general rule that administrative action which is not final cannot be attacked in an injunction proceeding upon the ground of lack of jurisdiction, the reason being that absent a final order or decision there usually can be no irreparable harm.[9] It is only when plaintiff can show that a continuance of an administrative agency's proceedings to completion will result in substantial injury of an irreparable nature—as distinguished from a mere apprehension of injury to result from a possible entry of a final order—that the requirement for finality is relaxed.

Minnesota cases uniformly hold that administrative action *which has not reached a stage causing plaintiff irreparable injury* cannot be enjoined even though the anticipated decision of the administrative agency is questioned on constitutional grounds.[10] Injunctive relief cannot be given for what is merely assumed to be a possible result.[11]

Clearly, plaintiff has not made a showing that he will suffer irreparable injury if he is denied equitable relief. It is not enough merely to allege that plaintiff, as a retail merchant with many employees, is vitally interested in minimum wage legislation for women and minors. In fact, even an allegation of irreparable injury would of itself be insufficient where the facts pleaded show, as

---

[9]See, United States v. Illinois Cent. R. Co. 244 U. S. 82, 37 S. Ct. 584, 61 L. ed. 1007; Myers v. Bethlehem Shipbuilding Corp. 303 U. S. 41, 58 S. Ct. 459, 82 L. ed. 638; Federal Power Comm. v. Metropolitan Edison Co. 304 U. S. 375, 58 S. Ct. 963, 82 L. ed. 1408; Petroleum Exploration, Inc. v. Public Service Comm. 304 U. S. 209, 58 S. Ct. 834, 82 L. ed. 1294; Macauley v. Waterman S. S. Corp. 327 U. S. 540, 66 S. Ct. 712, 90 L. ed. 839.

[10]Basting v. City of Minneapolis, 112 Minn. 306, 127 N. W. 1131; Reed v. Village of Hibbing, 150 Minn. 130, 184 N. W. 842.

[11]J. F. Quest Foundry Co. v. International M. & F. W. Union, 216 Minn. 436, 13 N. W. (2d) 32; see, Nemo v. Hotel & Restaurant Employees' Local No. 556, 227 Minn. 263, 35 N. W. (2d) 337, 811.

they do here, that plaintiff is faced only with problematical injuries stemming from nothing more than an apprehension that the final order of the commission will be prejudicial to his interest. Pursuant to § 177.08 the recommendations of the advisory board are advisory only and are not binding upon the commission. Whether the commission will adopt the board's majority recommendations or those of the minority is purely conjectural. Its final decision may be contrary to the recommendations of both the majority and the minority reports. The question of how its final decision will affect the plaintiff lies wholly in the realm of speculation. Problematical damages based on speculation cannot be used to establish irreparable harm as a basis for equitable relief.

■ Plaintiff has forcefully pointed out that, if this court were to decide at this time whether the commission had exceeded its jurisdiction and in the event that it should find a lack of jurisdiction, much time and expense would be saved by putting a halt to the proceedings. This argument, though appealing, is not sufficient. It is clear that costs expended in administrative hearings, even where the agency may be exceeding its jurisdiction, do not amount to irreparable injury justifying intervention by a court of equity.[12] Whether, in extremely exceptional cases, the expenses of continuing the hearing could constitute irreparable injury we need not now determine. The circumstances in the present case are far from being exceptional. In the absence of a showing of irreparable injury, we must hold that, in the interest of orderly and uninterrupted administrative action an injunction should not issue to interfere with the commission's administrative proceedings. If we were to hold otherwise, administrative agencies would be harassed and prevented from performing their functions through frequent attacks upon their jurisdiction.

Plaintiff has relied upon Rockne v. Olson, 191 Minn. 310, 254 N. W. 5, and Martin v. Wolfson, 218 Minn. 557, 16 N. W. (2d) 884.

[12]See, Petroleum Exploration, Inc. v. Public Service Comm. 304 U. S. 209, 58 S. Ct. 834, 82 L. ed. 1294; Davis, Administrative Law, § 188; 46 Yale L. J. 255, 260-261. Cf. State ex rel. Adent v. Industrial Comm. 234 Minn. 567, 48 N. W. (2d) 42.

8

Neither case is in point. The Rockne case was an action to enjoin members of a finance board from selling bonds in violation of statute pursuant to a resolution of the board. In that case, the action of the board that was enjoined was *imminent*, and not merely speculative and lying in the realm of conjecture. Although the court did not discuss the point, it is clear that irreparable injury would have resulted had not the proposed action of the board been enjoined. In the Rockne case, the court relied upon Cooke v. Iverson, 108 Minn. 388, 122 N. W. 251, 52 L.R.A. (N.S.) 415, which involved an action to enjoin a state auditor from issuing warrants pursuant to a statute alleged to be unconstitutional. In the Cooke case we pointed out that, when an executive refuses to act with respect to his purely ministerial duties, he may be compelled to act or restrained from acting, as the case may be, *at the suit of one injured thereby in his person or property for which he has no other remedy.*

The Martin case is of still another type. It did not deal with the question of when an agency proceeding may be enjoined before such proceeding has terminated in a final order; the question there was under what circumstances a final agency determination could be upset (*i. e.*, collaterally attacked) *in an action to which the agency was not a party.* This court held in that case that a rule or order to govern future conduct, made by an administrative tribunal pursuant to legislative mandate, was not subject to collateral attack except upon jurisdictional or constitutional grounds. It is to be noted that the court in the Martin case, in using the term "collateral attack," meant attacks upon administrative orders *after their issuance in actions in which the administrative agency was not a party.* The court said (218 Minn. 565, 16 N. W. [2d] 888-889):

"* * * In other words, should the courts, because of the legislative character of an administrative order, permit unlimited impeachment thereof in proceedings to which the administrative author is not a party? We think not."

In the context as used, "collateral attack" is analogous to the doctrine of *res judicata.* Clearly, the rule of the Martin case is

inapplicable to the case at bar. It is understandable how plaintiff fell into the error in relying upon the Martin case because of the confusion which surrounds the meaning of the term "collateral attack" as applied to administrative orders. See, Davis, Administrative Law, § 179; 42 Am. Jur., Public Administrative Law, §§ 159, 160.

The trial court's order is affirmed.

Affirmed.

