**CARL BOLANDER & SONS COMPANY, petitioner, Appellant,**

v.

**CITY OF MINNEAPOLIS, et al., Respondents,**

**State of Minnesota, by its Attorney General, Hubert H. Humphrey, III, applicant for intervention,**

**and**

**Prospect Park and East River Road Improvement Association, Amicus Curiae.**

**Nos. C4–91–2538, C7–92–48 and C9–92–116.**

Supreme Court of Minnesota.

July 2, 1993.

Frank J. Walz, Timothy A. Sullivan, Caryn S. Glover, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Alan R. Mitchell, St. Paul, for respondent, State of Minnesota.

Robert J. Alfton, Corey M. Conover, Minneapolis, for City of Minneapolis.

Jack Cann, Minneapolis, for amicus curiae, Prospect Park and East River Road Imp. Ass'n.

KEITH, Chief Justice.

Carl Bolander & Sons Company (Bolander) appeal from a decision by the court of appeals which consolidated two actions from Hennepin County District Court. 488 N.W.2d 804. In the first action, the court of appeals reversed a trial court judgment that Bolander did not have to complete an Environmental Assessment Worksheet (EAW) before receiving a license from the Minneapolis City Council to operate a concrete and asphalt recycling facility. The court of appeals also dismissed as moot the State of Minnesota's motion for intervention in this action as a matter of right. In the second action, the court of appeals affirmed a district court judgment denying Bolander's request for a temporary injunction against a concrete recycling facility operated by the City of Minneapolis. We affirm.

Bolander purchased a 17-acre parcel of property at the north end of Malcolm Avenue S.E. in the City of Minneapolis for use as a concrete and asphalt recycling yard. The company relocated to this new, larger site from its existing recycling facility in the City of St. Paul. The site was zoned for heavy industrial use, and a recycling yard is a permitted use under this existing zoning classification. Bolander states that the facility

> [w]ould recycle concrete and asphalt for use by the construction industry. The yard would employ a portable crushing machine and a series of conveyor belts to carry materials to the crusher from piles of materials to be crushed, and from the crusher to piles of crushed or recycled materials. All of these activities would take place out-of-doors. Trucks would bring in the materials to be crushed and haul out the recycled materials, primarily for use in road construction.

The City of Minneapolis operates a similar facility on a part-time basis on a 25-acre site near the Bryn Mawr neighborhood.

On September 11, 1991, Bolander applied to the city for a license to operate the new recycling facility. Citizens living in the vicinity of the site and belonging to the Prospect Park and East River Road Im-

provement Association (PPERRIA) filed a timely petition with the Environmental Quality Board (EQB) requesting that an Environmental Assessment Worksheet (EAW) be prepared pursuant to Minn.Stat. § 116D.04, subd. 2a(c) (1992), before the Minneapolis City Council granted Bolander the license. Pursuant to its rules, the EQB forwarded the PPERRIA petition to the City of Minneapolis as the responsible governmental unit to act on the petition. The appropriate committee of the city council held hearings on three separate dates in which both parties were represented and presented evidence. On November 11, 1991, following the recommendation of its committee, the city council ordered that an EAW be prepared for the project before a license would be granted.

Bolander filed suit against the City of Minneapolis on November 26, 1991, seeking an order requiring the city and its licensing officials to grant the license. On December 20, 1991, the district court ordered judgment, directing the city to issue Bolander a license without the necessity of preparing an EAW. On December 24, 1991, the State of Minnesota moved to intervene as of right to oppose Bolander's action for a license, pursuant to Minn.R.Civ.P. 24.01. The district court denied intervention.

On December 31, 1991, Bolander commenced a second action against the City of Minneapolis. In this action, Bolander sought to enjoin the city's operation of its own concrete and asphalt recycling facility on the grounds that the city's yard was unlicensed, it did not meet the city's own licensing requirements, and its operation was discriminatory in relation to the city's refusal to license Bolander's recycling yard. The district court denied temporary injunctive relief to Bolander and dismissed the action on January 14, 1992.

On appeal, we are asked to determine (1) whether Bolander is required to prepare an EAW for its proposed concrete recycling facility in the City of Minneapolis pursuant to Minn.Stat. § 116D.04, subd. 2a(c) (1992); (2) whether the trial court erred by denying intervention as a matter of right to the State of Minnesota; and (3) whether the trial court erred in denying Bolander a temporary injunction against the concrete recycling facility operated by the City of Minneapolis.

I

In this case, we must consider whether or not the provisions of the Environmental Policy Act of Minn.Stat. § 116D and the Environmental Rights Act, Minn.Stat. § 116B are applicable to this licensing request. These statutes set out the framework for agencies and citizens of the state to protect, preserve and enhance our natural resources.

Minn.Stat. § 116D.04, subd. 2a(c) (1992) provides:

> An environmental assessment worksheet shall * * * be prepared for a proposed action whenever material evidence accompanying a petition by not less than 25 individuals submitted before the proposed project has received final approval by the appropriate governmental units, demonstrates that, because of the nature or location of a proposed action, there may be potential for significant environmental effects.

An EAW is defined as a brief document which is "designed to set out the basic facts necessary to determine whether an environmental impact statement is required for the proposed action." Minn.Stat. § 116D.04, subd. 1a(c) (1992). Governmental action, in turn, means "activities including projects wholly or partially conducted, permitted, assisted, financed, regulated, or approved by units of government including the federal government." Minn.Stat. § 116D.04, subd. 1a(d) (1992).

An EAW is not required for projects for which no governmental decisions are required for granting a license. If an EAW is required for a governmental action, however, a project may not be granted until a petition for an EAW is dismissed. Minn.Stat. § 116D.04, subd. 2b (1992).

In this case, it is undisputed that the PPERRIA petition was signed by more than 25 individuals and was submitted to the city before the Bolander project had received the recycling yard license.

■ Bolander first argues that no governmental decisions are required for granting this license since the corporation has complied with all applicable licensing and zoning requirements and because the action to grant the license by the council is merely ministerial. *See Chanhassen Estates Residents Ass'n v. City of Chanhassen,* 342 N.W.2d 335, 340 (Minn.1984). Bolander concludes that, as a matter of law, Minneapolis has no right to require an EAW before approving a license for a concrete recycling facility.

In *Chanhassen,* a neighborhood group opposed the construction of a fast-food restaurant with a drive-up window. This court ordered the authorization of a building permit, finding that such a restaurant was permitted under the zoning code of the City of Chanhassen and, therefore, was consistent with the public health, safety, and general welfare. *Id.* at 340. We further held that denial of a permit must be based on something more concrete than neighborhood opposition and general expressions of concern for public safety and welfare. *Id.* at 340. However, the holding in *Chanhassen* is not applicable to this case because the provisions of Minn.Stat. chapter 116D and the rules formulated thereunder, which form the basis for this appeal, were not raised in that case. These statutes must be considered in evaluating Bolander's claim. *See Minnesota Pub. Interest Resource Group v. White Bear Rod & Gun Club,* 257 N.W.2d 762, 783 (Minn. 1977) (stating that "the city * * * has no authority to issue a permit or grant a variance which allows pollution, impairment, or destruction of the environment within the meaning of" the environmental statutes).

Government action was required under Minn.Stat. chap. 116D when the petition was forwarded to the city by the EQB, and the license could not be granted by the city until the EAW petition was dismissed. Minn.Stat. § 116D.04, subd. 2b(1) (1992). Clearly, granting a license is among the activities described as government action in Minn.Stat. § 116D.04, subd. 1a(d) (1992). Bolander's argument that granting the license under these facts is merely a ministerial action not requiring governmental action is erroneous.

Bolander then argues that the court of appeals erred in its finding that the project has the potential for significant environmental effects, stating that the trial court did not reach this issue.

■ In reviewing actions by a governmental body, the focus is on the proceedings before the decision-making body, in this case, the Minneapolis City Council, not the findings of the trial court. *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 823–24 (Minn.1977). Also, we review the governmental body's determination on the basis of whether it was unreasonable, arbitrary, or capricious. *Swanson v. City of Bloomington,* 421 N.W.2d 307, 313 (Minn. 1988). In reaching its decision, the city council, following the recommendations of its committee, made extensive findings of fact, including the following: the site of the proposed facility is just over 1,000 feet from the nearest residential neighborhood, trucks servicing the proposed facility would make between 160 and 200 trips past adjoining property every day, the increase in traffic would cause increased noise and dust problems in the area, the site would produce concrete and asphalt dust which are potentially toxic, and the potential for increased dust and particulate emissions warranted further study. These facts are significant to show that the project may have the potential for significant environmental effects. Clearly, the city, in adopting the committee's findings, did not act in an unreasonable, arbitrary, or capricious manner in requiring an EAW in this instance.

Bolander next argues that even if the project may have the potential for significant environmental effects, the EAW was unnecessary because it would merely discover that the project will not harm the environment. The threshold requirement of this statute, however, is whether the project *may* harm the environment. Minn. Stat. § 116D.04, subd. 2a(c) (1992). If it will not, this will be discovered during the EAW process, and a more extensive environmental impact statement will not be necessary.

Bolander finally argues that its rights to equal protection were abridged by the city's requirement that an EAW be prepared for its project while environmental review has not been conducted for the city's own recycling facility. Bolander argues that similarly situated applicants for building permits must be treated uniformly. *Northwestern College v. City of Arden Hills,* 281 N.W.2d 865, 869 (Minn.1979) (*citing Hay v. Township of Grow,* 296 Minn. 1, 8, 206 N.W.2d 19, 24 (1973)).

In *Northwestern College,* this court held that a municipality's denial of a permit to a private college to build a fine arts center in a residential district was discriminatory when similar permits had been granted previously to other private colleges and such a use was consistent with the municipality's zoning ordinance. We noted that the sole reason the permit was denied was because a neighborhood association expressed its disfavor for the project, and stated that "neighborhood sentiment * * * may not constitute the sole basis for granting or denying a given permit." *Id.* at 869. Bolander believes that neighborhood sentiment is also the sole reason that the city required an EAW before granting a license.

*Northwestern College* differs from the case at hand in two respects. First, Bolander was not denied a license. Rather, it was required to prepare an EAW before a license would be granted. Second, any difference in treatment between Bolander's project and the city's facility is attributable to the petition procedure outlined in the environmental statutes. In *Northwestern College,* the citizen group voiced opposition at city meetings. Here, the PPERRIA followed a statutory procedure requesting an EAW. To require the city to grant Bolander a license without requiring an EAW would undercut the intent of the citizen petition procedure. The city followed the requirements of the statute which state that an EAW "shall" be prepared upon receipt of an appropriate citizens group petition containing material evidence that the project has a potential for significant environmental effects. Minn.Stat. § 116D.04, subd. 2a(c) (1992). No citizen petition has been filed against the city's recycling facility. Clearly, the city did not act in an arbitrary manner by requiring Bolander to prepare an EAW even though the city did not seek environmental review of its own facility.

## II

Because we have determined that Bolander was not exempt from completing an EAW for the proposed project, one might assume that the question of the propriety of the trial court's order denying the state's motion to intervene as a matter of right has been rendered moot. As a practical matter, the state has now become an active participant in all future proceedings here and presumably will represent the statewide public policies embodied in the comprehensive legislative scheme.

However, the procedural and factual context in which the state's motion arose prompts our comments with regard to the trial court's order denying that motion. While the court concluded that the motion was timely, it held that Minn.R.Civ.P. 24.01 had not been satisfied because the state was unable to demonstrate either that its interest was greater than that of the city and its citizens or that, as a practical matter, a disposition of the action might impair or impede the state's ability to protect that interest. Here, the trial court was persuaded that the city's historical aggressive promotion of environmental protections and policies was determinative of its adequate representation of the state's position.

We have observed, in distinctive proceedings involving a challenge to the constitutionality of legislation and implicating Minn.R.Civ.P. 24.04 regarding notice to the attorney general, that the local government unit may not always be in a position to act as the state's agent. *See, e.g., Elwell v. County of Hennepin,* 301 Minn. 63, 70–71, 221 N.W.2d 538, 544 (1974). Here, the local governmental unit is charged with the implementation of a statewide-effective policy, while the state is charged with the management of the public policy in a broader sense. Under those circumstances, it may well be that a trial court should actively seek the participation of the state if no motion to intervene is offered or, alternatively, should liberally entertain a formal

motion to intervene. *See, e.g.,* Minn.Stat. § 116B.09 (1992).

### III

The final issue is whether the district court correctly denied Bolander's motion for a temporary injunction against the operation of the city's concrete recycling facility.

■ Bolander argues that the city's operation of its own recycling yard is illegal because the yard is operated without prior environmental review. Bolander also argues that the operation of the city's yards demonstrates a conflict of interest in that the city is unable to act fairly on Bolander's application to construct its facility in competition with the city. A decision on whether to grant a temporary injunction is left to the discretion of the trial court and will not be overturned on review absent a clear abuse of that discretion. *Eakman v. Brutger,* 285 N.W.2d 95, 97 (Minn.1977); *Cherne Indus., Inc. v. Grounds & Assocs., Inc.,* 278 N.W.2d 81, 92 (Minn.1979).

■ The trial court found that "neither by pleading nor by affidavit has Bolander cited any irreparable harm by the city's conduct which Bolander seeks to enjoin." Bolander's mere statement that it is suffering or will suffer irreparable injury, without more, is not enough to support a claim for injunctive relief. Moreover, Bolander has failed to demonstrate that its legal remedy is inadequate. *Cherne Indus.,* 278 N.W.2d at 92. For these reasons, we agree with the trial court that Bolander is not irreparably harmed by the city's operation of its own facility. Because there was no abuse of discretion by the trial court, its judgment denying temporary injunctive relief is affirmed.

In view of our decision, Bolander's motion for attorney fees incurred in this appeal is denied.

Affirmed.

PAGE, J., took no part in the consideration or decision of this case.