CITY OF MOUNDS VIEW, Respondent,

v.

METROPOLITAN AIRPORTS
COMMISSION, Appellant
(C0–98–1989),

Defendant and Counterclaimant
(C9–98–2011),

Metropolitan Council, Intervenor–
Defendant (C0–98–1989),

Appellant (C9–98–2011).

Nos. C0–98–1989, C9–98–2011.

Court of Appeals of Minnesota.

March 30, 1999.

Donald W. Selzer, Jr., Andrew J. Voss, Littler Mendelson, P.C., Minneapolis, for appellant, defendant and counterclaimant Metropolitan Airport Commission.

Andrew D. Parker, Kelly J. Smits, Matthew E. Johnson, Smith Parker, P.L.L.P., Minneapolis, for intervenor-defendant, appellant Metropolitan Council.

James M. Strommen, Robert C. Long, Kennedy & Graven, Chtd., Minneapolis, for respondent.

Considered and decided by HARTEN, Presiding Judge, RANDALL, Judge, and SHUMAKER, Judge.

## OPINION

HARTEN, Judge.

The district court granted respondent City of Mounds View a temporary injunction requiring appellant Metropolitan Airport Commission to withdraw its recommendation to appellant Metropolitan Council that an airport runway be extended. Because respondent failed to show that it would suffer irreparable harm absent the injunction, we conclude that the district court abused its discretion and reverse.

## FACTS

Appellant Metropolitan Council (MC) is a public corporation responsible for coordinating and planning the metropolitan area; appellant Metropolitan Airports Commission (MAC) is a public corporation with jurisdiction over airports. Respondent City of Mounds View (City) is located south of the Anoka County–Blaine Airport (Airport), a reliever airport for the main international airport.

In 1996, the legislature enacted Minn.Stat. § 473.608, subd. 27, requiring MAC to develop and implement a plan to divert the maximum feasible number of general aviation operations from the main international airport to reliever airports. MAC accordingly submitted to MC a plan outlining Airport's future and recommended extending Airport's east-west runway from 4,000 feet to 5,000 feet.

City then brought an action against MAC and moved for a temporary injunction requiring MAC to withdraw from MC's consideration plans for extending the runway. The motion was granted. MC intervened and joins MAC in this appeal from the temporary injunction.

## ISSUE

Did the district court abuse its discretion in granting an injunction without a showing of irreparable harm?

## ANALYSIS

 A decision on whether to grant a temporary injunction is left to the discretion of the trial court and will not be overturned on review absent a clear abuse of that discretion.

*Carl Bolander & Sons v. City of Minneapolis*, 502 N.W.2d 203, 209 (Minn.1993). A party seeking an injunction must first establish that the legal remedy is inadequate and that the injunction is necessary to prevent great and irreparable injury. *Cherne Indus., Inc. v. Grounds & Assocs.*, 278 N.W.2d 81, 92 (Minn.1979). The moving party must show that the particular relief requested will prevent the certain occurrence of an event that will cause significant injury—harm that cannot be redressed by a legal remedy. *Ecolab, Inc. v. Gartland*, 537 N.W.2d 291, 294 (Minn. App.1995).

■■ The district court found that, if a court eventually disallowed expansion of the runway, the expenses City will have incurred because MC and MAC planned for the extension of the runway will be "irreparable harm." This finding is contrary to caselaw. *Thomas v. Ramberg*, 240 Minn. 1, 60 N.W.2d 18 (1953), affirmed the denial of injunctive relief to an employer who sought to enjoin the industrial commission from undertaking to fix minimum wages for certain employees. The supreme court rejected the employer's argument that the commission might have exceeded its jurisdiction in acting to establish new minimum wage levels and therefore lacked power to proceed.

> Problematical damages based on speculation cannot be used to establish irreparable harm as a basis for equitable relief.
>
> [The employer] has forcefully pointed out that, if this court were to decide at this time whether the commission had exceeded its jurisdiction and in the event that it should find a lack of jurisdiction, much time and expense would be saved by putting a halt to the proceedings. This argument, though appealing, is not sufficient. It is clear that costs expended in administrative hearings, even where the agency may be exceeding its jurisdiction, do not amount to irreparable injury justifying intervention by a court of equity. * . * * In the absence of a showing of irreparable injury, we must hold that, in the interest of orderly and uninterrupted administrative action an injunction should not issue to interfere with the commission's administrative proceedings.

*Id.* at 7, 60 N.W.2d at 21–22. Like the employer in *Thomas,* City showed no injury other than "[p]roblematical damages based on speculation" when it argued that taxpayers' funds might be spent unnecessarily if eventually the court were to decide against extending the runway. *See also Sheehan v. Hennepin County District Court,* 253 Minn. 462, 93 N.W.2d 1 (1958) (upholding a writ of prohibition to stop the court issuing a temporary order restraining the commissioner of insurance from proceeding against an insurance company).

> The mere fact that a party might be saved the time and expense of defending himself at an administrative proceeding would not be sufficient to justify equitable relief by means of injunction * * *.
> * * * *
> * * * The temporary restraining order issued by the court below prevented relator [commissioner of insurance] from carrying out his administrative duties. The statute having made it plain that the exercise of such power by the court at the time was unauthorized, it becomes manifest that the remedy of appeal was and is plainly inadequate and the writ should not be denied.

*Id.* at 467–68, 93 N.W.2d at 5–6. Both *Thomas* and *Sheehan* solidly hold that an entity may not enjoin commissions from their legitimate activities because the expense the entity incurs as a result of those activities could prove unnecessary if the activities are subsequently disallowed by a court. The district court's finding that City would experience "irreparable harm" if MC were allowed to consider MAC's recommendation that the runway be extended is erroneous as a matter of law, and absent a showing of irreparable harm, the injunction interfering with the proceedings of MC and MAC was an abuse of discretion.

■ Moreover, even if City had met the threshold showing of irreparable harm, it did not make an adequate showing on the factors a court is to consider in granting injunctive relief. *Dahlberg . Bros., Inc. v. Ford Motor Co.,* 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965), enumerates the factors: (1) the parties' relationship prior to the dispute;

(2) the weight of the irreparable harm alleged by the party seeking the injunction compared to the weight of the harm suffered by the other party if the injunction is granted; (3) the likelihood that the party seeking the injunction will prevail on the merits; (4) public policy considerations; and (5) administrative burden on the court.

### 1. Prior Relationship of the Parties

■ City and MAC were in litigation concerning Airport's development during the 1980s. That litigation culminated in a July 1986 stipulation and court order that the runway be extended to 4,000 feet. The district court's finding on the parties' prior relationship implies that the 1986 order permanently restricts the length of the runway and prohibits MAC and MC from further planning.

The 1986 order, however, provided that Airport was to be developed "consistent with requirements of state law and the Metropolitan Development Guide, as of the date of this Agreement, as a 'minor use' airport." The maximum length for a minor use airport runway had been set at 5,000 feet two months earlier in MC's Aviation Development Guide/Policy Plan.[1] Extending the runway to 5,000 feet is now consistent with the development of Airport as "minor use."

Moreover, Minn.Stat. § 473.146, subd. 1 (1998), requires MC to "adopt a long-range comprehensive policy plan for * * * airports." This statutory obligation is not subject to a stipulation between City and MAC.

The parties' prior relationship as exemplified by the 1986 stipulation does not support granting the injunction.

### 2. Balance of Harm

Because City did not show that it would suffer any irreparable harm without the injunction and both MC and MAC are prevent-

ed from fulfilling their statutory duties by the injunction, this factor also weighs against the injunction.

### 3. Likelihood of Success on the Merits

■ The district court found that City is likely to succeed on the merits because extending the runway would violate either Minn.Stat. § 473.641, subd. 4 (1998) or the July 1986 court order. The evidence does not support this finding.

Minn.Stat. § 473.641, subd. 4, forbids MAC to

> expand or upgrade the use of an existing metropolitan airport from minor use to intermediate use status as defined by the metropolitan development guide, aviation chapter * * *.

This subdivision was added in 1980, when the maximum runway length for minor use airports was 4,000 feet. But the subdivision clearly provides that the definitions of "the metropolitan development guide, aviation chapter" are controlling. Neither the subdivision nor any other statute defines minor use airports in terms of maximum runway length; there is no indication that the legislature ever intended runway length to be established by statute rather than by MC and MAC.[2] Extending the runway to 5,000 feet will not violate the statute.

Nor will the extension violate the July 1986 order, which did not permanently establish the length of the runway and does not supercede MC's duty to develop long-range plans for airports. Absent violation of the statute or court order, City is unlikely to succeed on the merits. This factor weighs against temporary injunction.

### 4. Public Policy

The district court found that public policy regarding minor use airports is clearly set forth in the statutes. We agree, but nonetheless conclude that public policy does not

---

1. City argues that at the time it signed the stipulation, it did not know that the maximum runway length for minor use airports had been changed from 4,000 feet to 5,000 feet. But City does not suggest that MC or MAC wrongfully concealed this information or that they had a duty to inform City of the change.

2. City submitted an affidavit of a legislator stating that in 1980 he understood that changes in the definition of minor use airports would be made by the legislature, not by MC. But this understanding is not consistent with the statutory language specifying that minor use status is "as defined by the metropolitan development guide, aviation chapter."

support enjoining MC and MAC from performing their statutory duties. *See, e.g.,* Minn.Stat. § 473.146, subd. 1 (requiring MC to adopt a long-range comprehensive policy plan for airports); Minn.Stat. § 473.608, subd. 27 (1998) (requiring MAC to develop and implement a plan to transfer flights from the main airport to reliever airports).

█ The district court referred only to Minn.Stat. § 473.641, subd. 4, prohibiting the upgrading of minor use airports to intermediate use airports. But that statute is not violated by MC's consideration of MAC's recommendation to extend a runway to the maximum length for minor use airports as defined by the metropolitan development guide, aviation chapter.

Public policy as set forth in the statutes does not support granting the injunction.

## 5. Administrative Burden on the Court

This factor is irrelevant. The district court's finding that there is no burden in administering the injunction is true, but it is equally true that denying the injunction so planning can proceed imposes no administrative burden.

### DECISION

City did not make the showing of irreparable harm prerequisite to obtaining injunctive relief, and neither the parties' prior relationship, nor City's likelihood of success on the merits, nor public policy, supports granting the injunction.

**Reversed.**