*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0084**

Advance Contract Equipment and Design LC,
d/b/a, Rapids Foodservice Contract and Design,
Respondent,

vs.

Kevin LaMere,
Appellant,
Horizon Equipment LLC,
Defendant

**Filed August 31, 2015
Affirmed
Stauber, Judge**

Ramsey County District Court
File No. 62-CV-14-7506

Mark K. Thompson, Andrea L. Nemmers, MKT Law, P.L.C., St. Paul, Minnesota (for respondent)

Kevin LaMere, Fridley, Minnesota (pro se appellant)

Considered and decided by Stauber, Presiding Judge; Schellhas, Judge; and Bjorkman, Judge.

## UNPUBLISHED OPINION

**STAUBER**, Judge

On appeal from the district court's grant of a temporary injunction in favor of respondent, appellant, a former employee of respondent, argues that the district court

abused its discretion by granting the injunction because respondent (1) would not suffer irreparable harm in the absence of an injunction and (2) is not likely to succeed on the merits of its non-compete claim against appellant. We affirm.

## FACTS

Respondent Advance Contract Equipment and Design, L.C., d/b/a Rapids Foodservice Contract and Design (Rapids) is an Iowa limited liability company, which operates throughout the country, including Minnesota, distributing foodservice equipment and supplies. In October 2011, appellant Kevin LaMere began working for Rapids as a Minnesota sales representative. As a condition of his employment, LaMere signed a noncompete/nondisclosure agreement (agreement). The agreement precludes LaMere from using or disclosing Rapids's confidential information, and further precludes him from working for a competitor of Rapids in Minnesota and several other states for a period of one year following his termination of employment with Rapids.

Shortly after beginning his employment with Rapids, LaMere developed concerns about his employer's business practices. LaMere, who has over 30 years of experience in the foodservice industry, eventually began to look for other employment because he was concerned that Rapids's business practices would affect his ability to make "key sales." On October 17, 2014, LaMere received an employment offer from defendant Horizon Equipment, LLC, a direct competitor of Rapids in LaMere's sales territory. LaMere accepted the offer, resigned from his position at Rapids on October 21, 2014, and began working for Horizon as a sales representative the following day.

Rapids brought suit against LaMere and Horizon alleging breach of contract, tortious interference with contracts, and tortious interference with economic advantage. Rapids alleged that LaMere took with him to Horizon certain confidential information as defined by the agreement. Rapids also alleged that LaMere used this confidential information in his new job with Horizon to directly compete with Rapids in the foodservice equipment sales business in the greater Twin Cities metro area.

Shortly after filing suit, Rapids moved for a temporary restraining order against LaMere and Horizon, seeking compliance with the agreement. The district court treated the motion as one for a temporary injunction and held a hearing. At the hearing, Rapids limited the scope of its requested temporary injunction, seeking to preclude LaMere from competing in the "Twin Cities seven-county metropolitan area only, rather than the full scope outlined in the agreement itself." The district court granted the motion, enjoining LaMere from "working in the field of restaurant equipment and supply sales in the seven-county metropolitan area of the Twin Cities region." The district court also ordered that the injunction would "remain in effect until further order or until completion of a trial on the merits." LaMere appeals.

## D E C I S I O N

"A temporary injunction is an extraordinary equitable remedy that preserves the status quo pending a trial on the merits." *Cent. Lakes Educ. Ass'n v. Indep. Sch. Dist. No. 743, Sauk Ctr.*, 411 N.W.2d 875, 878 (Minn. App. 1987), *review denied* (Minn. Nov. 13, 1987). The district court has broad discretion to grant or deny a temporary injunction, and we will reverse only for an abuse of that discretion. *Carl Bolander & Sons Co. v.*

3

*City of Minneapolis*, 502 N.W.2d 203, 209 (Minn. 1993). A district court's findings regarding entitlement to injunctive relief will not be set aside unless clearly erroneous. *LaValle v. Kulkay*, 277 N.W.2d 400, 402 (Minn. 1979).

"A party seeking an injunction must first establish that the legal remedy is inadequate and that the injunction is necessary to prevent great and irreparable injury." *City of Mounds View v. Metro. Airports Comm'n*, 590 N.W.2d 355, 357 (Minn. App. 1999). Once a party has established irreparable harm, the district court must consider five factors before issuing an injunction to prevent injury. *Id.* at 357-58. These factors include: (1) the relationship of the parties; (2) the relative harm to the parties if the injunction is or is not granted; (3) the likelihood of success on the merits; (4) public policies expressed in statutes; and (5) the administrative burdens in supervising and enforcing the decree. *Dahlberg Bros., Inc. v. Ford Motor Co.*, 272 Minn. 264, 274-75, 137 N.W.2d 314, 321-22 (1965). LaMere challenges the district court's findings with respect to (a) the threshold issue of irreparable harm, and (b) the third *Dahlberg* factor, Rapids's likelihood of success on the merits.

## I.       Irreparable harm

"An injunction will not issue to prevent an imagined injury which there is no reasonable ground to fear. The threatened injury must be real and substantial." *Hollenkamp v. Peters*, 358 N.W.2d 108, 111-12 (Minn. App. 1984) (quoting *AMF Pinspotters, Inc. v. Harkins Bowling, Inc.*, 260 Minn. 499, 504, 110 N.W.2d 348, 351 (1961)). To be granted an injunction, the moving party must offer more than a "mere statement that it is suffering or will suffer irreparable injury." *Carl Bolander & Sons*,

4

502 N.W.2d at 209. Money damages are generally not independently sufficient to provide a basis for injunctive relief. *Miller v. Foley*, 317 N.W.2d 710, 713 (Minn. 1982). Failure to show irreparable harm is, by itself, a sufficient ground for denying a temporary injunction. *Morse v. City of Waterville*, 458 N.W.2d 728, 729 (Minn. App. 1990), *review denied* (Minn. Sept. 28, 1990).

The district court found that, "[w]hile money damages may be a potential avenue of recompense for ongoing violations, the Court recognizes the importance of relationships in th[e] highly competitive [foodservice] industry." The district court concluded that, "[t]o the exten[t] goodwill is built by relationships and prior transactions, allowing . . . LaMere to compete directly with [Rapids] in the same market with the same customers creates a strong inference of irreparable harm as recognized in *Webb Publ'g Co. v. Fosshage*, 426 N.W.2d 445, 448 (Minn. App. 1988)."

LaMere argues that the district court's conclusion that Rapids demonstrated the existence of irreparable harm is clearly erroneous because it was "based solely on generalized assertions of hypothetical future injury." We disagree. This court has stated:

> Irreparable injury can be inferred from the breach of a restrictive covenant if the former employee came into contact with the employer's customers in a way which obtains a personal hold on the good will of the business. . . . However, the inference may be rebutted by evidence that the former employee has no hold on the good will of the business or its clientele.

*Fosshage*, 426 N.W.2d at 448 (citations omitted).

Here, Joseph A. Schmitt, the CEO of Rapids, testified in his affidavit that in LaMere's three years at Rapids, his sales numbers were "approximately 40% to 50% of

5

[the] Twin Cities branch contract sales." Schmitt also testified that LaMere "was the second highest grossing salesperson company wide," and that LaMere had "developed significant relationships with [Rapids's] customers [who] know him as the face of [the] company." Schmitt's testimony indicates that LaMere had established good will with a substantial number of Rapids's customers. And, as the district court found, a loss of this good will by LaMere's leaving Rapids is extremely difficult to measure.

Moreover, the record reflects that Horizon directly competes with Rapids. And that over the last few weeks of his employment with Rapids, LaMere accessed a list of restaurants, bars, and other target accounts, and viewed, downloaded, or printed this information. In fact, even if LaMere did not misappropriate confidential information from Rapids's customer database, there is still support for the district court's decision to grant the injunction because LaMere had access and knowledge of specific information regarding (1) Rapids's clients' needs and preferences and (2) rates charged for services. *See Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 453 (Minn. App. 2001) (recognizing that, even if the employee did not confiscate internal company documents, "the knowledge he gained while working with Medtronic's customers gives him insight into customer preferences"). Furthermore, Rapids provided evidence that on the day he began working for Horizon LaMere emailed his cousin, a sales manager at Horizon, "with a sales order to place for a Rapids's customer that . . . LaMere recently serviced." Although not overwhelming, evidence of LaMere's access to Rapids's confidential information and his apparent attempt to share at least some of this information with Horizon, along with his success with Rapids and his prominence in the industry, is

6

enough to support an inference of irreparable harm. *See id.* at 452 (inferring irreparable harm when the former employee came into contact with the employer's customers in a way in which he "obtains a personal hold on the good will of the business" (quotation omitted)); *see also Creative Commc'ns Consultants, Inc. v. Gaylord*, 403 N.W.2d 654, 657 (Minn. App. 1987) (finding irreparable harm based, in part, on former employee's threatened disclosure of confidential information). Therefore, the district court's determination that Rapids demonstrated the existence of irreparable harm is not clearly erroneous.

## II.     Likelihood of Success on the Merits

LaMere also challenges the district court's conclusion that Rapids is likely to succeed on the merits of its non-compete claim. Although each of the five factors articulated in *Dahlberg* is important, this court has stated that the probability of success in the underlying action is a "primary factor" in determining whether to issue a temporary injunction. *Minneapolis Fed'n of Teachers Local 59 v. Minneapolis Pub. Schs., Special Sch. Dist. No. 1*, 512 N.W.2d 107, 110 (Minn. App. 1994), *review denied* (Minn. Mar. 31, 1994). Even if a party makes a strong showing of irreparable harm, a district court need not grant a temporary injunction where that party has demonstrated no likelihood of success on the merits. *Sanborn Mfg. Co. v. Currie*, 500 N.W.2d 161, 164-65 (Minn. App. 1993).

This court "look[s] upon restrictive covenants with disfavor, carefully scrutinizing them because they are agreements in partial restraint of trade." *National Recruiters, Inc. v. Cashman*, 323 N.W.2d 736, 740 (Minn. 1982). In order to be enforceable, non-

compete agreements must be reasonable and supported by consideration. *See Davies &*

*Davies Agency, Inc. v. Davies*, 298 N.W.2d 127, 131 (Minn. 1980) (discussing policy

reasons for these elements). The test of reasonableness is

> whether or not the restraint is necessary for protection of the
> business or good will of the employer, and if so, whether the
> stipulation has imposed upon the employee any greater
> restraint than is reasonably necessary to protect the
> employer's business, regard being had to the nature and
> character of the employment, the time for which the
> restriction is imposed, and the territorial extent of the locality
> to which the prohibition extends.

*Softchoice, Inc. v. Schmidt*, 763 N.W.2d 660, 667 (Minn. App. 2009) (quoting *Bennett v.*

*Storz Broadcasting Co.*, 270 Minn. 525, 534, 134 N.W.2d 892, 899 (1965)).

LaMere argues that the "district court failed to engage in any form of analysis of

the non-compete agreement." He claims that an analysis of the agreement would

demonstrate that it is "unreasonable, both in lack of reference to pre-existing customers,

the consideration and its temporal and geographic scope." Thus, LaMere contends that

the district court abused its discretion by concluding that Rapids was likely to succeed on

the merits.

We disagree. LaMere's argument focuses on the district court's failure to analyze

the reasonableness of the agreement with respect to temporal and geographic scope. But

a review of the complaint reveals that in addition to alleging that "LaMere breached the

Agreement by accepting employment with one of [Rapids's] competitors," the complaint

alleged that "LaMere breached the Agreement by using and disclosing [Rapids's]

confidential information." And in concluding that Rapids was "likely" to "prevail on the

merits of at least some of its claims," the district court found that Rapids demonstrated by affidavit that "LaMere forwarded potential Confidential Information in an e-mail to another Defendant Horizon employee . . . on the day after he resigned that was a clear attempt to elicit a sale from a current or potential customer of Rapids in the Twin Cities." The district court also found that the "fact that that effort may not have resulted in a sale by Defendant Horizon to that customer does not reduce the magnitude of the alleged breach of . . . LaMere's non-compete requirements." LaMere does not challenge the reasonableness of the confidentiality provision. Therefore, because the district court based its analysis of the third *Dahlberg* factor, at least in part, on LaMere's alleged disclosure of confidential information in violation of the agreement's prohibition of such conduct, and because LaMere does not challenge the reasonableness of the confidentiality provision, the district court's failure to analyze the reasonableness of the agreement with respect to temporal or geographic scope is not dispositive of the issue.

LaMere argues that an analysis of the reasonableness of the agreement is necessary because if the agreement "were deemed invalid as an unreasonable restriction on trade," his alleged disclosure of confidential information "would be a non-issue." But LaMere's argument assumes a determination that the agreement was unreasonable in temporal and geographic scope would void the entire agreement. Such a conclusion is unlikely because agreements protecting confidential information are reasonably necessary to protect legitimate business interests. *See Medtronic*, 630 N.W.2d at 456 (stating that restrictive covenants are enforced to the extent reasonably necessary to protect legitimate business interests, which include the "company's good will, trade secrets, and

9

confidential information"). In fact, Rapids invited the district court to blue-pencil the agreement to ensure its reasonableness.[1] And although the district court apparently determined that it was unnecessary to blue-pencil the agreement, it would have that discretion on remand. *See Dynamic Air*, 502 N.W.2d at 800 (reminding the district court on remand that it has "the discretion to 'blue pencil' a covenant"). Thus, it is unlikely that a determination that the agreement is unreasonable in temporal or geographic scope would void the entire agreement.

Finally, LaMere argues that his "mere *access* to Confidential Information during his employment falls well short of proving extraordinary circumstances warranting injunctive relief." But LaMere's attempts to downplay his alleged conduct are without merit. As the district court found "LaMere forwarded potential Confidential Information in an email to another . . . Horizon employee" in an attempt to elicit a sale from a current or potential customer of Rapids in the Twin Cities Metro area. The district court's findings are supported by the record and reflect a breach of the agreement. In light of this apparent breach of the agreement, the district court finding that Rapids would likely succeed on the merits is not clearly erroneous. Accordingly, the district court did not abuse its discretion by granting Rapids's request for a temporary injunction.

**Affirmed.**

---

[1] Under the blue-pencil doctrine, a district court that finds a noncompetition provision unreasonable as written may modify the provision "to render it reasonable and enforceable." *Dynamic Air, Inc. v. Block*, 502 N.W.2d 796, 800 (Minn. App. 1993).