**Lloyd M. LaVALLE, et al., Respondents,**

v.

**Faye KULKAY, et al., Appellants.**

**No. 48307.**

Supreme Court of Minnesota.

March 30, 1979.

Franke, Riach & Franke and Ronald J. Riach, St. Paul, for appellants.

Melchert, Hubert, Howe & Young, Thomas R. Howe and Mac R. Willemssen, Waconia, for respondents.

Heard before ROGOSHESKE, PETERSON, and SCOTT, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Plaintiffs[1] initiated this action for injunctive relief against defendants George and Faye Kulkay, seeking to enforce a restrictive covenant in their deeds by permanently enjoining defendants from renting the basement of their residence to persons not members of their family. Defendants counterclaimed against plaintiffs Lloyd M. LaValle and Margaret A. LaValle, seeking damages allegedly caused by the LaValles' placement of an in-ground swimming pool in violation of setback restrictions established in the Carver County zoning ordinance.

The trial court found that Alfred W. Harms and Anita F. Harms, the original owners of the property, platted the property intending to create a general plan of development restricting the use of the property to single-family residential purposes, and in order to effectuate this intent they placed in most of the deeds transferring lots in their subdivision a restriction which was enforceable by plaintiffs. The trial court held defendants violated the restrictive covenant in their deed by converting their residence into a multi-unit dwelling and by actually renting apartments to nonfamily members. In regard to defendants' counterclaim, the trial court found that the LaValles' swimming pool was constructed and located with the acquiescence and consent of the defendants. Therefore, the trial

court permanently enjoined defendants from renting or leasing the two units in their basement and dismissed defendants' counterclaim. We affirm.

1. We consider, first, the issue raised by plaintiffs' application for injunction against defendants. Alfred W. Harms and Anita F. Harms owned property in Carver County, located on Lake Waconia, which they platted into subdivisions known as Harms Lake View Terrace and Harms Lake View Terrace First Division (hereafter referred to as Lake View Terrace). A restrictive covenant in the original and subsequent deeds to many of the lots in Lake View Terrace made them "subject to the condition that nothing but a single private dwelling or residence, designed for the occupancy of one family and an appurtenant garage shall be erected upon said land * * *."

In 1959, the Harms transferred to defendant Faye Kulkay lots in Lake View Terrace by warranty deed containing the above-quoted covenant. Plaintiffs are other property owners living in Lake View Terrace at locations generally nearby defendants' property. The deeds through which plaintiffs became property owners contained substantially the same covenant as that quoted above.

Defendants constructed a single-family residence in the spring of 1970. At that time, they were aware of the restrictive covenant. Defendants' construction plans were presented to the Harms, and defendants assured the Harms that their building was not going to be a duplex. On July 31, 1973, Mr. Kulkay was placed on disability retirement from the United States Treasury Department. The resulting financial impact induced defendants to remodel their basement into two rental units. These units were rented subsequently to persons unrelated to defendants. During remodeling, objections were registered by several of the plaintiffs to use of the property for rental purposes.

[1]. Plaintiffs in this action were Lloyd M. LaValle and Margaret A. LaValle, Robert M. Harding and Nancy M. Harding, Kenneth G. Schmitt and Clare Ann Schmitt, and Kenneth J. Trnka and Charlotte M. Trnka. Wilmer Feltman and Marlys Feltman and Harold J. Alton and Margaret L. Alton were also originally plaintiffs, but they were struck as parties to this action.

Mrs. Harms testified she and her husband had a general plan in mind when they developed Lake View Terrace; the plan was to restrict the development to one-family dwellings. She further testified the restrictive covenant was put into many of the deeds in order to effectuate this purpose, and the restriction was designed to protect everyone with property in the development.

Fifteen original transfers were made between 1954 and 1961 by the Harms of 29 of the 84 lots in Lake View Terrace; the deeds involved contained no such restrictive covenant. Mrs. Harms testified that the restriction was not put into many of these early deeds because the first lots were sold to people from Waconia the Harms knew well, people who would build a single-family dwelling and not use such a dwelling for multi-family purposes. The restriction was put into deeds as people the Harms did not personally know wanted to buy lots, in order to protect everyone by preventing the construction of multi-family dwellings. Nevertheless, the Harms sold to five purchasers they did not know and yet whose deeds did not contain the restriction.

■ Resolution of the injunctive action depends on whether the trial court was correct in its finding that the Harms had a general plan in mind in developing the property and that the plan was to restrict the development to single-family dwellings. The trial court's finding will not be set aside unless it is clearly erroneous. *Theros v. Phillips,* 256 N.W.2d 852 (Minn.1977).[2]

■ The existence of a general plan of development is a question of fact to be determined by looking to the intention of the original owners in platting the development, the conditions of the platting, the sale of the lots, and all surrounding circumstances as indicated verbally or in writing. *Rose v. Kenneseth Israel Congregation,* 228 Minn. 240, 252, 36 N.W.2d 791, 798 (1949). The grantor's intention is the most important factor to consider in determining

whether there exists a general plan. See, *Rose v. Kenneseth Israel Congregation, supra.*

■ Evidence of the grantor's intention in developing the area as supplied by the grantor herself demonstrates that the trial court's finding is not clearly erroneous. The testimony of Mrs. Harms is the most persuasive evidence available of whether the original grantors intended that Lake View Terrace be developed as a general plan, and her testimony strongly indicates a general plan restricting the area to single-family use was intended. The persuasiveness of Mrs. Harms' testimony is buttressed by the following factors: (1) She was not a party in this action; (2) she testified only after being subpoenaed by plaintiffs and indicated she would have preferred not to testify; and (3) she no longer owns any land in the development.

Defendants point out that the Harms could not have enforced the restriction if the people without the restrictive covenant had rented out their premises or if these people had sold to buyers who later rented out the premises, but this does not mean that the trial court's finding is clearly erroneous. While the Harms could have better protected the development by putting the restriction in all the deeds, the omission of such a restriction in deeds to people the Harms knew well and whom the Harms believed would not use their dwellings for other than single-family use does not mandate the position that the Harms had no general plan in mind. Likewise, the fact that five of these early deeds without the restrictive covenant were transferred to people Mrs. Harms admitted she did not know does not necessarily overcome Mrs. Harms' testimony that she and her husband intended a general plan.

Defendants also note that the testimony indicated five other residents of Lake View Terrace were renting or had rented portions

---

**2.** Under the clearly erroneous rule, the trial court's findings of fact may be set aside only if the court on the entire evidence is left with the definite and firm conviction that a mistake has

been made. *Minnesota Pub. Interest Research Group v. White Bear Rod & Gun Club,* 257 N.W.2d 762 (Minn.1977).

of their residences. The evidence of other rentals would be significant if it demonstrated abandonment of the general plan and illustrated that the purpose of the restrictive covenant had become obsolete because a significant amount of property in the area had changed to other uses, but there is no evidence of a significant amount of contrary use of property in the development. Likewise, the testimony at trial indicated plaintiffs were unaware of any other people who were renting part of their residences until the present litigation, and the dwellings were not in the immediate area lived in by plaintiffs. The Harms knew of two persons who had rented out a portion of their residences, but Mrs. Harms testified that one person was informed of the restrictive covenant and thereafter discontinued the renting, and the other person was not confronted because she had been recently widowed. On this record, the fact that five other residents had rented or were renting portions of their homes does not mandate that the trial court's finding is clearly erroneous.

■ The trial court's finding that a general plan existed is not clearly erroneous. Therefore, plaintiffs are entitled to enforce the restrictive covenant. We have stated covenants restricting the use of property will be given the full force and effect intended by the party who created them, and where the language used is clear and unambiguous it will be given its obvious meaning. *Rose v. Kenneseth Israel Congregation, supra.* The covenant in question allowed only a single, private dwelling to be constructed. Our decision in *Strauss v. Ginzberg*, 218 Minn. 57, 15 N.W.2d 130 (1944), illustrates that a covenant restricting the type of building which can be erected applies to the use as well as to the character of the building. Plaintiffs are entitled to have defendants enjoined from renting out the basement of their residence.

■ 2. We consider, second, the issue presented by the viability of defendants' counterclaim depends on whether the trial court found correctly that defendants acquiesced in and consented to the placement of the LaValles' pool and thus were estopped [3] from recovering for any zoning violation by the LaValles.[4] The trial court's finding is not clearly erroneous.

There are sufficient facts in the record to establish that defendants acquiesced in the placement of the pool. Even before the pool was constructed, defendants knew where the pool was going to be located. It is uncontroverted that defendants made no objections to the pool's location before or during construction. Defendants swam in the pool a couple of days after it was constructed and voiced no disapproval of the placement of the pool. The LaValles only became aware of defendants' displeasure with the pool at a township board meeting in August of 1974, a period of almost 1 year following construction of the pool. Under these facts, defendants were correctly held to be estopped from recovering for any zoning ordinance violation.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.

---

3. As noted in its memorandum, the trial court found that defendants acquiesced in and consented to the location of the pool, and therefore it reasoned defendants were guilty of laches. Laches is an equitable defense and is not relevant to this action because defendants are requesting damages and not an injunction. The correct issue is whether defendants acquiesced in the location of the pool and thus should be estopped from recovering for any zoning violation.

4. The LaValles constructed a swimming pool in the fall of 1973. At the time of construction, the applicable Carver County zoning ordinance for Lake Waconia established that a structure had to be set back 20 feet from any side line. The LaValles' pool was built within 20 feet of their common boundary line with defendants. There was no showing at trial that the LaValles realized the location of their pool would violate any zoning ordinance.