SILVER BAY AREA CITIZENS CONCERNED FOR QUALITY EDUCATION, Petitioners, Respondents,

v.

LAKE SUPERIOR SCHOOL DISTRICT NO. 381, Appellant.

No. C4-89-1440.

Court of Appeals of Minnesota.

Nov. 28, 1989.

Review Denied Jan. 23, 1990.

David P. Sullivan and William L. Westholm, Sullivan & Setterlund, Ltd., Duluth, for respondents.

Peter D. Bergstrom and John M. Roszak, Ratwik, Roszak, Bergstrom, Maloney & Bartel, Minneapolis, for appellant.

Heard, considered and decided by GARDEBRING, P.J., and FORSBERG and RANDALL, JJ.

## OPINION

FORSBERG, Judge.

This appeal is from an order granting a writ of mandamus and injunction. Respondent Silver Bay Area Citizens Concerned for Quality Education, an ad hoc group of Silver Bay citizens, sought the writ to compel appellant Lake Superior School District No. 381 to conduct additional hearings on its decision to close the only elementary school in Silver Bay. The injunction prevents any closure or construction pending these additional hearings. We reverse.

## FACTS

Silver Bay has one elementary school, the Mary MacDonald Elementary School, and one high school, the William Kelley High School. In 1987, appellant decided to explore the feasibility of closing the elementary school and transferring its operations to the high school building.

A public hearing was held in November 1988 before an independent hearing officer in accordance with the school closing statute, Minn.Stat. § 123.36, subd. 11 (1988). Testimony was heard from the superintendent of the school district and from a number of concerned citizens. In his findings of fact, conclusions, and order, the hearing

officer recommended the elementary school be closed and Silver Bay's K–12 educational program be consolidated in the high school building. This recommendation was consistent with earlier recommendations received from a citizen task force, from consultants, and from a report prepared by the Minnesota Department of Education.

At a regular school board meeting on December 12, 1988, the hearing officer's order was adopted.

Remodeling of the high school building was scheduled to begin July 5, 1989 and continue until early 1990. During this remodeling, the elementary program was to remain in the elementary school building. Unused portions of the elementary school building were leased to Lake County for office space.

On July 3, 1989, respondent applied to district court for a writ of mandamus compelling appellant to hold another hearing for additional evidence prior to closing the elementary school building. In its petition, respondent alleged:

> Since the completion of the hearing, new facts have developed which demonstrate that the evidence before the hearing commissioner was incorrect and further that circumstances have so changed since the hearing that the facts upon which the hearing officer based his decision are no longer true.

The new facts cited by respondent involved the actual remodeling costs and the arrival of new employers in the area.

After an ex parte proceeding, the district court granted respondent's request for an alternative writ of mandamus and temporary restraining order.

A hearing on the writ was held July 11, 1989. On July 21, 1989, the district court issued an order granting the writ and requiring appellant to hold additional hearings on its decision to close the elementary school. The court also continued its injunction against any remodeling or demolition work in the high school building.

This appeal followed.

## ISSUES

1. Did the district court lack jurisdiction to issue a writ of mandamus?

2. Was mandamus an appropriate remedy in this case?

## ANALYSIS

### I.

■ A writ of certiorari is the proper form of action for challenging a school district's decision to close a school. *See Moberg v. Independent School District No. 281*, 336 N.W.2d 510, 519 (Minn.1983). Such a writ must be issued by this court within 60 days of the school district's decision. Minn.Stat. § 606.01 (1988); Minn. Stat. § 480A.06, subd. 3 (1988). Certiorari was never sought or obtained by respondent in this case.

■ Appellant argues review by writ of certiorari is an exclusive remedy, and the district court lacked jurisdiction to issue a writ of mandamus. By its nature, certiorari is confined to the record before the school district at the time of its decision. *Amdahl v. County of Fillmore*, 258 N.W.2d 869, 874 (Minn.1977). Respondent contends certiorari is an inadequate remedy in this case because it does not allow consideration of facts which arose after the public hearing. The facts cited by respondent as new and in need of examination involve the actual remodeling costs of the high school building and the impact of new employers on the projected enrollment figures. Respondent's position assumes these facts are truly new and not included in the record below; respondent's position also assumes these facts create a need to reconsider the closure decision. We disagree with both assumptions.

*Remodeling costs*

During the public hearing, appellant represented its engineers' estimate of costs of remodeling the high school at about $64,920. Contrary to the district court's findings, the hearing officer did not expressly accept this figure. His recommended findings merely state:

12. The task force committee studied the drawings of floor plans for both Mary MacDonald and the William Kelley buildings. Alternate plans were developed to convert the William Kelley building from a 7–12 facility to a K–12 facility. Architect expenses, however, will be deferred until after the School Board makes its final decision.

This finding was not challenged through review by writ of certiorari. It suggests decisions involving remodeling costs were left largely to appellant's discretion. Once appellant chose a remodeling plan, it was free to enter into contracts conforming to the specifications established by its architects. By authorizing the expenditures required by those contracts, appellant determined the cost of remodeling was consistent with its decision to close the elementary school. The fact that in June 1989 appellant entered into a $350,000 remodeling contract does not render the basis for its prior closure decision faulty or incorrect. Requiring a new hearing on this issue represents an improper interference with appellant's broad discretionary authority. *See* Minn.Stat. § 123.35 (1988).

*New employers*

The district court also requires appellant to consider further evidence on the impact of new employment opportunities in the Silver Bay area. In support of its decision, the court found:

8. * * * The evidence is not clear how many, if any, additional students will result from the 300 to 400 new jobs. The Findings of the Hearing Examiner adopted by the Board did not anticipate these employers or any other increases in employment in the area and in fact anticipated continued declining enrollments and corresponding declining revenues.

This finding mischaracterizes the hearing officer's recommended findings, which state in pertinent part:

16. * * * At least 26 [people opposed to the closing of the elementary school] spoke at this hearing on November 28, 1988. Their objections and observations can be summarized as follows:

* * * * * *

D. Projected deficits ignore anticipated economic development i.e. reopening of Reserve and the new Veterans Nursing Home.

* * * * * *

17. * * * Speculation regarding the status of Reserve Mining Company and its Silver Bay taconite operations strongly influenced a recommendation that the School Board wait one more school year (the 1988–89 school year) before consolidating the Mary MacDonald building and the William Kelley High School building.

18. While the task force ultimately recommended waiting one more school year due to the Reserve Mining Company speculation, there was no question that the two buildings should be merged due to declining enrollment, financial limitations, and the ability to establish more economical and efficient operations by a merged facility.

* * * * * *

23. All of the projections regarding declining enrollment and declining revenues remain valid.

24. The status of Reserve Mining Company remains uncertain and unclear. There may be some recall of employees, but there is no guarantee that those persons recalled would have children of school age and in fact, it is more likely that those with the greatest seniority would primarily be "empty nesters."

As illustrated by the above findings, which again were not challenged through review by writ of certiorari, the impact of new employers on student enrollment was considered by the hearing officer and by appellant. Any "new" developments on this issue fail to render the underlying closure decision faulty or incorrect.

In conclusion, the two issues cited by respondent and the district court as new and in need of examination were considered by appellant prior to making its closure decision. As such, certiorari was an adequate remedy in this case and the district

court lacked jurisdiction to issue a writ of mandamus.

## II.

Even if the district court had jurisdiction to issue a writ of mandamus, respondent is not entitled to this extraordinary remedy. A party seeking a writ of mandamus must not only establish it has no adequate remedy at law, but also "[t]he existence of a law specifically requiring the performance of an act which is a *duty* imposed on a person resulting from the office that person occupies." *Friends of Animals and Their Environment (FATE) v. Nichols*, 350 N.W.2d 489, 491 (Minn.Ct. App.1984) (emphasis in original); *see* Minn. Stat. § 586.01 (1988).

Mandamus may issue to compel a ministerial act; it is not properly issued when the official has discretion with respect to the act in question. *Electronics Unlimited, Inc. v. Village of Burnsville*, 289 Minn. 118, 125–26, 182 N.W.2d 679, 684 (1971). Mandamus may, however, be used to set an agency's exercise of discretion in motion. *FATE*, 350 N.W.2d at 491 (citing *Zion Evangelical Church v. City of Detroit Lakes*, 221 Minn. 55, 21 N.W.2d 203 (1945)); *see* Minn.Stat. § 586.01 (A writ of mandamus "may require an inferior tribunal to exercise its judgment * * * but it cannot control judicial discretion").

In this case, appellant fully complied with the school closing statute prior to making its decision. *See* Minn.Stat. § 123.36, subd. 11 (1988). The statute does not require or provide for further hearings after a closure decision becomes final. Once a public hearing has been held and the statutory requirements for a school closing have been met, any decision to consider new facts or changed circumstances is left to the discretion of the school district. *See* Minn.Stat. § 123.35; *Western Area Business and Civic Club v. Duluth School Board Independent District No. 709*, 324 N.W.2d 361, 363–64 (Minn.1982). Appellant has arguably exercised that discretion simply by refusing to hold additional hearings.

Because we conclude the district court lacked jurisdiction and mandamus was an inappropriate remedy in this case, we reverse the district court's order. The writ of mandamus is quashed and the injunction vacated.

We need not address appellant's claim that issuance of injunctive relief was an abuse of the district court's discretion.

Appellant also argues the bond required of respondent by the district court in its July 3, 1989 order is inadequate to protect its interests. A party seeking a temporary restraining order or temporary injunction is required to post a bond "in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined." Minn.R.Civ.P. 65.03(a). Appellant argues the $2500 bond should be increased to a minimum of $60,000. Any challenge to the adequacy of a bond must first be raised and addressed by the district court. We therefore do not reach the merits of this issue.

## DECISION

Reversed.