# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-1652

Wayzata Nissan, LLC,
Appellant,

v.

Nissan North America, Inc.,
Respondent,

Stephen J. McDaniels, et al.,
Respondents.

**Filed June 15, 2015**
**Affirmed; motion denied**
**Rodenberg, Judge**

Hennepin County District Court
File Nos. 27-CV-14-12789 and 27-CV-14-1

Christopher W. Madel, Aaron R. Thom, Nicole S. Frank, Robins Kaplan, LLP, Minneapolis, Minnesota (for appellant)

John Rock, Bruce L. Gisi, Rock Law LLC, Minneapolis, Minnesota; and

Brandon L. Bigelow (pro hac vice), Seyfarth Shaw LLP, Boston, Massachusetts (for respondent Nissan North America, Inc.)

Lawrence R. Commers, Timothy J. Grande, Patrick C. Summers, DeWitt, Mackall Crounse & Moore S.C., Minneapolis, Minnesota (for respondents Stephen J. McDaniels, et al.)

Considered and decided by Rodenberg, Presiding Judge; Johnson, Judge; and

Stoneburner, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

When a new motor vehicle dealership[1] is sold and then relocated to a location less than five miles from its original location and more than five miles distant from another dealer of the same line make, the safe-harbor provision of the Minnesota Motor Vehicle Sale and Distribution Act, Minn. Stat. § 80E.14, subd. 1 (2014),[2] is applied at the time of the relocation. Relocation of a newly-acquired dealership within the safe-harbor provision requires neither notice to another dealer in the relevant market area nor a good-cause hearing.

**O P I N I O N**

**RODENBERG**, Judge

Appellant Wayzata Nissan, LLC challenges the district court's denial of a temporary restraining order against respondents Stephen McDaniels, EP Motors, Inc., McEP Investments, LLC, and Nissan North America, Inc., seeking to enjoin relocation of a Nissan dealership to a new location within ten miles of appellant's existing dealership. Because the relocating dealer meets the requirements of the safe-harbor provision of Minn. Stat. § 80E.14, subd. 1, we affirm.

---

[1] "New motor vehicle dealer" is defined by Minn. Stat. § 80E.03, subd. 3 (2014) and refers to one who sells "new [not used] motor vehicles to consumers . . . and who holds a valid . . . agreement, franchise, or contract granted by a manufacturer."

[2] We refer to the 2014 statutes as they are unchanged from the 2012 statutes.

## FACTS

This appeal arises from the sale of a Bloomington Nissan dealership to McDaniels,[3] facilitated by respondent Nissan North America, Inc. (Nissan NA), a Nissan manufacturer, with the intention of relocating the dealership to Eden Prairie to a new location within ten miles of appellant's existing Nissan dealership.

**Sale of Feldmann Nissan**

Feldmann Imports, Inc. (Feldmann) operated a Nissan dealership in Bloomington. On March 21, 2014, Feldmann executed an asset purchase agreement (APA) with Lupient Automotive Group, Inc. to sell the dealership. Feldmann conditioned the sale on the purchaser relocating the dealership to Eden Prairie, as Feldmann planned to use the existing Bloomington facility for other ventures. On April 15, 2014, Nissan NA (a manufacturer of new motor vehicles, with multiple Minnesota franchises) exercised its right of first refusal, stepping into the shoes of the purchaser under the APA. On May 2, 2014, Nissan NA assigned its rights to McDaniels. On July 28, 2014, McDaniels entered into an APA with Feldmann to purchase the dealership and relocate it to Eden Prairie.

Appellant, which operates a Nissan dealership in Wayzata, learned of the potential sale of Feldmann's dealership and, on May 1, 2014, sent a letter to Nissan NA alleging that Nissan NA was conspiring to open a dealership 7.6 miles from appellant's dealership and notifying Nissan NA that appellant might seek injunctive relief. Nissan NA replied, stating that it was not required to provide notice to appellant because it planned to

---

[3] McDaniels and his corporate entities, EP Motors, Inc. and McEP Investments, LLC, are referred to collectively as McDaniels.

"permit Feldmann [Nissan] and/or its successor in interest to relocate its Nissan dealership" pursuant to a safe-harbor provision in the Minnesota Motor Vehicle Sale and Distribution Act (MVSDA).[4]

In July 2014, appellant moved the district court for a temporary restraining order (TRO) to prevent McDaniels from operating a Nissan dealership in Eden Prairie, and requested an expedited good-cause hearing under the MVSDA. The district court denied the motion for a TRO, concluding that McDaniels was not an "existing dealer" under the statute at that time, but that the existing dealer safe-harbor provision of Minn. Stat. § 80E.14, subd. 1, applies when a manufacturer intends to relocate an existing dealership, even if that relocation coincides with a transfer of the dealership to a new owner. This interlocutory appeal from the denial of appellant's motion followed.

On the same day the TRO was denied, McDaniels began operating the Nissan dealership purchased from Feldmann at the Bloomington location, subleasing the building from Feldmann. On November 1, 2014 McDaniels began operating the dealership at the Eden Prairie location, within ten miles of appellant's dealership.

**ISSUES**

I. Is this appeal moot?

II. Did the district court err in denying appellant's motion for temporary injunctive relief?

---

[4] Nissan NA also filed suit in federal district court for a declaratory judgment that the relocation of the Bloomington dealership to the Eden Prairie location was permissible under the MVSDA.

4

## ANALYSIS

## I.

"It is well settled that if, pending an appeal, an event occurs which renders it impossible to grant any relief to appellant, or which makes a decision unnecessary, the appeal will be dismissed as presenting a moot question." *In re Twp. of Glendale, Scott Cnty.*, 180 N.W.2d 925, 927 (Minn. 1970). But an appeal is not moot "if [a party] could be afforded effectual relief." *Hous. & Redev. Auth. ex rel. City of Richfield v. Walser Auto Sales, Inc.*, 641 N.W.2d 885, 891 (Minn. 2002).

Respondents argue that, because the TRO sought by appellant was limited to prohibiting the relocation, and because McDaniels relocated the Nissan dealership to the Eden Prairie location in November 2014, effective relief is no longer possible and this appeal is therefore moot.

Appellant responds that effective relief remains available, noting that, at a preliminary hearing before the district court, the parties discussed McDaniels' awareness that, if the district court's denial of a TRO were reversed on appeal, McDaniels might be enjoined from operating the relocated dealership in Eden Prairie.[5]

---

[5] The following discussion was had on July 30, 2014:

> THE COURT: . . . it sounds like [appellant is] saying, "Go ahead [McDaniels], keep readying the [Eden Prairie] site if you want to, but you do so at your peril in the sense that you might lose."
> MCDANIELS' ATTORNEY: Uh-huh, agree.
> THE COURT: You might lose this.
> MCDANIELS' ATTORNEY: Agree.
> THE COURT: But that's just a risk you're willing to take.
> MCDANIELS' ATTORNEY: That's right.

Effective relief remains available despite McDaniels having relocated. If we were to reverse and remand, the district court could enjoin McDaniels from operating the Eden Prairie dealership pending a good-cause hearing. That McDaniels is now operating a dealership at the new location does not prevent continued operations there from being enjoined, if appropriate. Because effective relief could still be granted, this appeal is not moot.

McDaniels separately argues that this appeal has been mooted during its pendency by the district court having dismissed the claims against it. Appellant responds that there remain live claims in the district court because appellant's claims against Nissan have not been dismissed and final judgment has not been entered.

Because no judgment has been entered, the dismissal of the claims against McDaniels is not final and could be revised "at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of the parties." Minn. R. Civ. P. 54.02. Moreover, even if the district court were to enter partial judgment under Minn. R. Civ. P. 54.02, which it has not, appellant could elect to appeal and the appeal from the denial of appellant's motion for a TRO would not be mooted until appellant had exhausted its appellate remedies. Because appellant retains a viable interest in the claims asserted against McDaniels, this appeal is not moot because of the district court's dismissal of the claims against McDaniels.

---

THE COURT: It must have been a risk you're willing to take
from -- your client was willing to take from day one, this
statute has been around.
MCDANIELS' ATTORNEY: Sure.

6

We also observe that the issues raised in this appeal are relevant to the merits of the case. This appeal from the denial of appellant's motion for a TRO concerns the limitations on establishing and relocating new motor vehicle dealerships under Minn. Stat. § 80E.14 (2014), and the district court's denial of the motion for a TRO, as well as its dismissal of appellant's claims against McDaniels, was based on the same reasoning under the same statutory provision. The issue of whether Minn. Stat. § 80E.14 applies to this particular relocation goes to the heart of this case. Expedient resolution of this issue will serve the interests of judicial efficiency.

This appeal is not moot and we therefore deny the motion of the McDaniels respondents to dismiss the appeal on that basis.

**II.**

Appellant argues that the district court erred in denying its motion for a TRO by interpreting the MVSDA to allow McDaniels to relocate the former Feldmann dealership from Bloomington to Eden Prairie under the safe-harbor provision in Minn. Stat. § 80E.14, subd. 1.

We review a district court's broad discretion in granting or denying temporary injunctive relief for abuse of that discretion.[6] *U.S. Bank Nat'l Ass'n v. Angeion Corp.*, 615 N.W.2d 425, 434 (Minn. App. 2000), *review denied* (Minn. Oct. 25, 2000). "On

---

[6] The district court here concluded that the temporary injunction decision was governed by the requirements of the MVSDA and it did not analyze the *Dahlberg* factors. *Dahlberg Bros., Inc. v. Ford Motor Co.*, 137 N.W.2d 314, 321-22 (Minn. 1965). The parties do not challenge on appeal the district court's exclusive focus on the MVSDA in denying the injunction motion, and we therefore proceed with our analysis based on the record and arguments as presented.

review, we consider the facts in the light most favorable to the prevailing party." *Metro. Sports Facilities Comm'n v. Minnesota Twins P'ship*, 638 N.W.2d 214, 220 (Minn. App. 2002), *review denied* (Minn. Feb. 4, 2002). "A district court's findings regarding entitlement to injunctive relief will not be set aside unless clearly erroneous," *Haley v. Forcelle*, 669 N.W.2d 48, 55 (Minn. App. 2003), *review denied* (Minn. Nov. 25, 2003), but we review statutory interpretation de novo, *Burkstrand v. Burkstrand*, 632 N.W.2d 206, 209 (Minn. 2001). And, as discussed below, this case of first impression turns on interpretation and application of Minn. Stat. § 80E.14, subd. 1.

The MVSDA governs contracts between new motor vehicle dealers and manufacturers to promote the public interest and welfare by regulating these entities. Minn. Stat. §§ 80E.01-.02 (2014). The MVSDA includes a section governing establishment of "an additional new motor vehicle dealership or relocating an existing new motor vehicle dealership within or into a relevant market area where the line make is then represented." Minn. Stat. § 80E.14, subd. 1. The "relevant market area" is defined as "a radius of ten miles around an existing dealership." *Id.* The statute requires that a "manufacturer shall, in writing, first notify each new motor vehicle dealer in this line make in the relevant market area of the intention to establish an additional dealership or to relocate an existing dealership within or into [the relevant] market area." *Id.* To challenge such a proposed relocation, a dealership must, within 30 days of receiving the notice or "within 30 days after the end of any appeal procedure provided by the manufacturer . . . commence a civil action in a court of competent jurisdiction." *Id.*

8

The third paragraph of section 80E.14, subdivision 1 includes a safe-harbor provision concerning relocation of existing dealers. It provides that "relocation of an existing dealer within its area of responsibility . . . shall not be subject to this section, if the proposed relocation site is within five miles of its existing location and is not within a radius of five miles of an existing dealer of the same line make." *Id.* The safe-harbor provision does not reference the manufacturer, but limits the provision to "relocation of an existing dealer within its area of responsibility *as defined in the franchise agreement*." *Id.* (emphasis added). This safe-harbor provision, referred to colloquially as the "5-and-5 rule," exempts a relocation from all requirements of the section when an existing dealer relocates to a new location within ten miles of another new motor vehicle dealership in that relevant market area so long as the "relocation site is within five miles of its existing location and is not within a radius of five miles of an existing dealer of the same line make." *Id.*

The parties agree that the Eden Prairie Nissan dealership is within appellant's "area of responsibility" as defined in the franchise agreement and "relevant market area" as defined under the statute. They also agree that the relocation of the dealership from Bloomington to Eden Prairie complies with the 5-and-5 rule. The district court concluded, and the parties agree on appeal, that the "only dispute" is whether McDaniels qualifies as an "existing dealer," such that the statute's safe-harbor provision applies to exempt Nissan NA from the notification and good-cause hearing requirements. The dealer at the Bloomington location was Feldmann when the relocation was first contemplated, but the dealer was McDaniels after July 28, 2014.

9

The objective of statutory interpretation is to "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014); *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn. 1999). Statutory interpretation begins with a determination of whether a statute's language is clear or ambiguous, on its face. *Gomon v. Northland Family Physicians, Ltd.*, 645 N.W.2d 413, 416 (Minn. 2002). "A statute is only ambiguous if its language is subject to more than one reasonable interpretation." *Christianson v. Henke*, 831 N.W.2d 532, 537 (Minn. 2013). If the statutory language is unambiguous, we do not engage in any further construction and instead look to the statute's plain meaning. *Gomon*, 645 N.W.2d at 416; *see also Leifur v. Leifur*, 820 N.W.2d 40, 43 (Minn. App. 2012) (noting "meritorious policy arguments" were rejected because we "may not disregard unambiguous statutory language").

Every law should be interpreted "to give effect to all its provisions," if possible. Minn. Stat. § 645.16. "In ascertaining legislative intent a statute is to be construed as a whole so as to harmonize and give effect to all its parts, and where possible, no word, phrase, or sentence will be held superfluous, void, or insignificant." *Anderson v. Comm'r of Taxation*, 253 Minn. 528, 533, 93 N.W.2d 523, 528 (1958). But courts "will not read into a statute a provision that the legislature has omitted, either purposely or inadvertently." *Reiter v. Kiffmeyer*, 721 N.W.2d 908, 911 (Minn. 2006).

The district court interpreted Minn. Stat. § 80E.14, subd. 1, to require a determination of "what point in time [the district court] should view the facts to decide whether a dealer is an 'existing dealer.'" The district court concluded that the relevant point in time is when "the manufacturer developed a sufficiently definite intention" to

10

relocate a dealership. It then concluded that Nissan NA intended to relocate the Feldmann Nissan dealership "on May 8, 2014, at the latest." Therefore, it concluded, McDaniels was not the existing dealer of the Nissan dealership at that time. Next, the district court determined that "existing dealer," as used in the safe-harbor provision of the statute, "is not limited to 'dealers' in the personal sense, and may apply where, as here, a manufacturer intends to relocate a dealership that is operating pursuant to an existing franchise, even if a different franchise agreement will be in place after the relocation." Under this definition of "existing dealer," the district court concluded that the Bloomington Nissan dealership, then owned by Feldmann but later acquired by McDaniels, was an existing dealership able to be relocated under the safe-harbor provision. The district court therefore denied the motion for a temporary injunction.

No reported case in Minnesota addresses the question of when, for purposes of the safe-harbor provision in Minn. Stat. § 80E.14, subd. 1, a relocating dealer is properly considered an "existing dealer."

We begin our de novo statutory interpretation by considering the safe-harbor provision. The safe-harbor provision relates to relocation of "an existing dealer" to a new location within five miles of its current location and at least five miles from "an existing dealer of the same line make." Minn. Stat. § 80E.14, subd. 1. While "existing dealer" is not defined by the MVSDA, the statute defines a "dealer" as "a person who . . . is engaged in the business of selling new motor vehicles . . . and who holds a valid sales and service agreement, franchise, or contract, granted by a manufacturer, distributor, or wholesaler for the sale of its motor vehicles." *See* Minn. Stat. § 80E.03, subd. 3.

11

Manufacturers are not mentioned in the safe-harbor provision. Minn. Stat. § 80E.14, subd. 1.

The term "dealership," undefined by the MVSDA but used in various sections of it, is absent from the safe-harbor provision. The safe-harbor provision refers only to existing dealers and provides that the "relocation of an existing dealer . . . within five miles of its existing location" exempts the existing dealer from the notice and good-cause hearing requirements if the relocation is also "not within a radius of five miles of an existing dealer of the same line make." Minn. Stat. § 80E.14, subd. 1. The plain language of the statute requires that we consider the status of the relocating dealer at the time of the relocation. Nothing in the statute requires or suggests examination of the legal status of the relocating dealer at any point other than at the time of relocation.

Here, on and after July 28, 2014, McDaniels was the existing dealer operating the Nissan dealership in Bloomington. At the time of the relocation in November 2014, McDaniels had operated as a Nissan dealer in Bloomington for over three months. McDaniels then relocated within five miles of "its existing location" to a new location at least five miles from appellant, triggering application of the safe-harbor provision. Under the plain language of the statute, the relocation required neither notice to appellant nor a good-cause hearing.

That Nissan NA exercised its right of first refusal and intended the eventual relocation before McDaniels became a dealer at the former Feldmann dealership location has no effect on the application of the safe-harbor provision. The safe-harbor provision by its terms applies to the relocation of existing dealers. It exempts manufacturers and

12

dealers from all of the requirements of Minn. Stat. § 80E.14, including the notification requirements of Minn. Stat. § 80E.14, subd. 1, that would otherwise apply when a manufacturer seeks to establish a new dealership or relocate an existing dealership into an existing dealer's relevant market area. And nothing in the safe-harbor provision indicates that the time for determining whether the safe-harbor provision applies is when the intention to relocate is first formed. *See id.* "Existing dealer" must be determined at the time of relocation as the plain language of the safe-harbor provision states that existing dealers "shall not be subject to this section" if they comply with the 5-and-5 rule. *Id.* Because McDaniels was an existing dealer at the time of relocation, and because its relocation falls within the 5-and-5 safe-harbor rule, the relocation is not subject to the requirements of Minn. Stat. § 80E.14, subd. 1. The district court did not err in denying appellant's motion for a TRO.

## D E C I S I O N

The notification and good-cause hearing requirements in Minn. Stat. § 80E.14, subd. 1, do not apply here because the safe-harbor provision exempted McDaniels from these requirements. McDaniels was an existing dealer when it relocated to a new location within five miles of its existing location and at least five miles from appellant's existing dealership of the same line make.

**Affirmed; motion denied.**

13